AO 91 (Rev. 11/11) Criminal Complaint      SAUSA Chester Choi (312) 353-5300

FILED
JUN 28 2019
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AUGUSTINE ALMODOVAR-ALVAREZ | CASE NUMBER: **19 CR 538** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about May 20, 2019, at Cicero, in the Northern District of Illinois, Eastern Division, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) | did knowingly and intentionally distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance. |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_____
ANTONIO VAZQUEZ
Task Force Officer, Drug Enforcement Administration (DEA)

Sworn to before me and signed in my presence.

Date: June 28, 2019

_____
*Judge's signature*

City and state: Chicago, Illinois      YOUNG B. KIM, U.S. Magistrate Judge
                                                                                       *Printed name and Title*

UNITED STATES DISTRICT COURT  
NORTHERN DISTRICT OF ILLINOIS | Ss

## AFFIDAVIT

I, ANTONIO VAZQUEZ, being duly sworn, state as follows:

1. I am a Task Force Officer with the Drug Enforcement Administration ("DEA") and have been so employed since approximately May 2016. I am currently assigned to the DEA Chicago Field Division, and my responsibilities include the investigation of narcotics trafficking offenses, including offenses defined by 21 U.S.C. §§ 841 and 846.

2. This affidavit is submitted in support of a criminal complaint alleging that AUGUSTINE ALMODOVAR-ALVAREZ has violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging ALMODOVAR-ALVAREZ with distributing one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, physical surveillance, information provided

by a confidential source, consensual recordings, and my experience and training, as well as the training and experience of other agents with whom I have spoken.

## FACTS ESTABLISHING PROBABLE CASE

4. In summary, and as further detailed below, in April 2019, an undercover DEA agent ("the UC") was introduced to two Mexico-based narcotics brokers, Individuals A and B, through a cooperating source ("the CS") working with the DEA.[1] On or about May 15, 2019, Individuals A and B contacted the CS and told the CS that they knew a supplier in the Chicago area that had kilogram quantities of heroin available and that the supplier could provide the CS with a sample. The UC contacted Individual A and told Individual A that the UC would conduct the heroin deal on behalf of the CS. On or about May 17, 2019, the UC met with ALMODOVAR-ALVAREZ at a 7-11 parking lot located in Cicero. ALMODOVAR-ALVAREZ provided the UC with a sample of heroin that was wrapped in a paper towel. Following the meeting with ALMODOVAR-ALVAREZ, the UC told Individual A that the UC wanted to purchase the heroin and Individual A told the UC that the price of the heroin was $37,000 per kilogram. On or about May 20, 2019, the UC met ALMODOVAR-ALVAREZ in Cicero, where ALMODOVAR-ALVAREZ gave the UC two brick shaped packages each containing approximately half a kilogram of heroin.

---

[1] The cooperating source is currently charged federally with a controlled substance offense. The cooperating source is cooperating with the DEA in the hopes of receiving a reduced sentence for this charge. No promises have been made to the cooperating source about the outcome of the pending prosecution. The cooperating source has previous DUI, theft, and firearm related convictions.

5.      On or about May 15, 2019, at approximately 4:15 p.m., the CS received a call from Individual A. This call was recorded.[2] During the call, Individual A passed the phone to Individual B. Individual B told the CS, "we need to do something [a narcotics transaction] and that "there are three [kilograms] of the white food [heroin] where you are." Individual B suggested that the CS "meet with his guy [supplier] here in the street," and that CS will be given a "photo" [sample of heroin].

6.      On or about May 16, 2019, at approximately 2:12 p.m., the CS received a call from Individual A. This call was recorded. Individual A passed the phone to Individual B. Individual B told the CS that he spoke with his "guy" [supplier] and that the CS "can meet with him so you can see if you like it [heroin]. This guy said he can give you one pizza [one kilogram of heroin] and then later another one [kilogram of heroin]. They have a lot of pizzas [kilograms of heroin]. They want to see how we work. He also said that they want you to come down here [Mexico] with your assistant [the UC] and see the pizzas [heroin] and choose the ones you like and how many you

---

[2] Some of the consensually recorded conversations ("recorded conversations") and text messages have been summarized in this Affidavit. The recorded conversations among the CS, the UC, Individual A, Individual B, and ALMODOVAR-ALVAREZ are in Spanish. The text messages between the UC and Individual A are also in Spanish. I am able to read, speak, and comprehend conversational Spanish. The summaries of the recorded conversations and text messages throughout this Affidavit are based upon my preliminary review and preliminary translations of the recorded conversations and text messages, and do not reflect summaries from certified translated transcripts of the recorded conversations and text messages. The times listed for the recorded conversations and text messages are approximate. The summaries do not include all statements or topics covered during the course of the recorded conversations and text messages. At various points in the Affidavit, I have included my interpretation of words and phrases used in the recorded conversations and text messages. My interpretations are based on conversations with and information I received from the UC and the CS, my knowledge of the investigation as a whole, my experience and training in narcotics investigations, and the experience and training of other law enforcement agents with whom I have consulted.

3

want and they will send it to you." Individual B told the CS that Individual A would provide the CS's number to his supplier and that someone would be reaching out to the CS.

7. On or about May 16, 2019, at approximately 4:14 p.m., the UC and Individual A exchanged several text messages. The UC sent a message to Individual A asking that Individual A provide Individual B's supplier the UC's number, not the CS's number. Individual A responded that Individual A did not have direct communication with the supplier. The UC then messaged Individual A asking whether the "work" [heroin] was for the UC or the CS. Individual A responded by text message that the "work" [heroin] was for both the UC and the CS. The UC and Individual A agreed that the UC would handle the heroin transaction. Individual A asked the UC not to ask any questions of the courier.

8. On or about May 16, 2019, at approximately 6:14 p.m., the UC received a call from a Hispanic male, later identified as AUGUSTINE ALMODOVAR-ALVAREZ[3], using a Mexican cell phone number ("ALMODOVAR-ALVAREZ'S phone"). This call was recorded. ALMODOVAR-ALVAREZ told the UC that he was "calling on behalf of Matazano" and that he wanted to meet with the UC. The UC told

---

[3] AUGUSTINE ALMODOVAR was identified as follows: At the time of ALMODOVAR's arrest on or about May 20, 2019, ALMODOVAR had in his possession an Illinois identification card with the name Jesus Medina. ALMODOVAR told law enforcement in a voluntary interview that the identification card was fake and that his real name is AUGUSTINE ALMODOVAR. Following the interview, ALMODOVAR was taken to Berwyn Police Department where law enforcement officers took ALMODOVAR's fingerprints. ALMODOVAR's fingerprints were submitted into a law enforcement database, which confirmed ALMODOVAR's identity. The UC recognized the voice of the person the UC met at the Cicero 7-11 on or about May 17 and 20, 2019, as the same person the UC spoke to on ALMODOVAR's phone.

4

ALMODOVAR-ALVAREZ that it was too late to meet with him that night, but that the UC could meet him in the morning. The UC asked ALMODOVAR-ALVAREZ where was he located and ALMODOVAR-ALVAREZ stated that he was in Cicero. The UC then told ALMODOVAR-ALVAREZ that the UC would call him the next morning and that they could meet somewhere in Cicero. ALMODOVAR-ALVAREZ agreed. The UC advised ALMODOVAR-ALVAREZ that the UC was told that ALMODOVAR-ALVAREZ would bring the UC a "photo" [sample of heroin] and ALMODOVAR-ALVAREZ said "yes."

9. On or about May 16, 2019, at approximately 8:19 p.m., the UC received several text messages from Individual A. Individual A wrote to the UC that Individual A heard that the UC and the "courier" [ALMODOVAR-ALVAREZ] had come to an agreement. The UC responded to Individual A that the UC and the "courier" [ALMODOVAR-ALVAREZ] agreed to meet early the following morning.

10. On or May 17, 2019, at approximately 10:48 a.m., the UC placed several calls to ALMODOVAR-ALVAREZ at ALMODOVAR-ALVAREZ's phone, but received no answer. A few minutes later, the UC received a call from ALMODOVAR-ALVAREZ from ALMODOVAR-ALVAREZ's phone. This call was recorded. The UC told ALMODOVAR-ALVAREZ that the UC was at the Walgreens located at the intersection of Harlem Avenue and West Cermak Road in Cicero, Illinois. ALMODOVAR-ALVAREZ told the UC to meet him at the 7-11 located at the intersection of 35th and Austin in Cicero ("the Cicero 7-11"). The UC proceeded to drive to the Cicero 7-11.

11. On or about May 17, 2019, at approximately 11:12 a.m., the UC arrived at the Cicero 7-11 parking lot. The UC called ALMODOVAR-ALVAREZ at ALMODOVAR-ALVAREZ's phone. This call was recorded. The UC told ALMODOVAR-ALVAREZ that the UC was at the meeting location. ALMODOVAR-ALVAREZ responded that he was on his way. At approximately 11:17 a.m., ALMODOVAR-ALVAREZ called the UC using ALMODOVAR-ALVAREZ's phone. This call was recorded. As the UC received the call, the UC saw ALMODOVAR-ALVAREZ in a gray 2005 Chevy Equinox with license plate number BF40307 ("ALMODOVAR-ALVAREZ's vehicle")[4] parked directly in front of the Cicero 7-11. The UC then saw ALMODOVAR-ALVAREZ exit ALMODOVAR-ALVAREZ's vehicle and walk over to the UC's vehicle. ALMODOVAR-ALVAREZ entered the UC's vehicle from the front passenger-side door. The UC's vehicle was equipped with audio and video recording device, and the conversation between the UC and ALMODOVAR-ALVAREZ was recorded. The UC and ALMODOVAR-ALVAREZ first exchanged greetings. ALMODOVAR-ALVAREZ then reached into his pocket and pulled out a balled up paper towel and handed it to the UC. The UC opened the paper towel and saw a clear plastic bag containing a tan colored powder. The substance in the paper towel given to the UC by ALMODOVAR-ALVAREZ later field tested positive for heroin. The UC asked ALMODOVAR-ALVAREZ if the UC should call him or call the guy down in Mexico [Individual A] to make arrangements for the deal, referring to

---

[4] Based on a search of law enforcement databases, the registered owner of ALMODOVAR-ALVAREZ's vehicle is Individual C with a registered address on the 3500 block of S. Austin Blvd., Chicago, Illinois.

6

the anticipated heroin transaction. ALMODOVAR-ALVAREZ advised the UC to call them [Individual A] and they can decide. ALMODOVAR-ALVAREZ then exited the UC's vehicle and got back into the ALMODOVAR-ALVAREZ's vehicle. The UC and ALMODOVAR-ALVAREZ both departed the area.

12. On or about May 17, 2019, at approximately 11:47 a.m., Individual A sent the UC several text messages asking whether the UC received the "photo" [sample of heroin] and whether the UC "like[d] it [heroin]." The UC responded that s/he just gotten the sample and had not had a chance to check the product. Individual A then asked the UC whether the UC wanted Individual A to "set it [heroin] aside" and the UC responded that the UC "wanted it [heroin]" and that the UC could "pick it [heroin] up on Monday at the earliest." The UC asked Individual A "how many [kilograms of heroin] they have right now" and Individual A responded, "one and a half [kilograms of heroin] but will be getting more in the coming week." The UC asked Individual A about the price of the heroin, and Individual A responded "37" [$37,000 per kilogram].

13. On or about May 20, 2019, at approximately 11:15 a.m., the UC placed several calls to ALMODOVAR-ALVAREZ at ALMODOVAR-ALVAREZ's phone, but received no one answer. At approximately 11:23 a.m., ALMODOVAR-ALVAREZ called the UC from ALMODOVAR-ALVAREZ's phone. This call was recorded. The UC told ALMODOVAR-ALVAREZ that the UC was ready to pick up that "thing" [heroin] and that the UC could meet ALMODOVAR-ALVAREZ at the Cicero 7-11 in

7

30 to 40 minutes. ALMODOVAR-ALVAREZ told the UC to call him when the UC was in the area.

14. On or about May 20, 2019, at approximately 11:45 a.m., the UC arrived in the parking lot of Walgreens located on the 5800 block of West 35th Street in Cicero, Illinois. At approximately 11:58 a.m., the UC called ALMODOVAR-ALVAREZ at ALMODOVAR-ALVAREZ's phone. This call was recorded. The UC told ALMODOVAR-ALVAREZ that the parking lot of the Cicero 7-11 was full and asked ALMODOVAR-ALVAREZ to meet the UC at the Walgreens instead. ALMODOVAR-ALVAREZ agreed.

15. On or about May 20, 2019, at approximately 12:02 p.m., the UC saw ALMODOVAR-ALVAREZ walking through the Walgreens' parking lot, approach the UC's vehicle, and enter the UC's vehicle through the front passenger-side door. The UC's vehicle was equipped with an audio and video recording device, and the conversation in the UC's vehicle was recorded. The UC and ALMODOVAR-ALVAREZ exchanged greetings. At ALMODOVAR-ALVAREZ's request, the UC then drove to an area near the 5900 block of West 35th Street in Cicero, Illinois and parked next to ALMODOVAR-ALVAREZ's vehicle. The UC then told ALMODOVAR-ALVAREZ that the UC was first promised "three" [kilograms of heroin], then "one and a half" [kilograms of heroin], and then "one" [kilograms of heroin]. The UC then asked ALMODOVAR-ALVAREZ how much he had to give the UC. ALMODOVAR-ALVAREZ responded that he had "one" [kilogram of heroin] and that all he had was "one [kilogram of heroin] to hold for [the UC]." ALMODOVAR-ALVAREZ then said

8

that "actually had two [kilograms of heroin] but I already got rid of one [kilogram of heroin]." ALMODOVAR-ALVAREZ then asked the UC, "how much are you going to give me?" The UC responded "30" [$30,000]. The UC then saw a Hispanic female, later identified as Individual C, exit ALMODOVAR-ALVAREZ's vehicle and approach the UC's vehicle. ALMODOVAR-ALVAREZ opened the front passenger-side door and Individual C pulled a plastic grocery bag from underneath her black hooded sweatshirt and placed it on ALMODOVAR-ALVAREZ's lap. Individual C then walked away from the UC's vehicle. ALMODOVAR-ALVAREZ gave the plastic bag to the UC, which contained two brick shaped packages both containing a tannish colored powder. The contents of the two brick shaped packages ALMOVODAR-ALVAREZ gave to the UC later field tested positive for heroin and weighed approximately one kilogram.

16. The UC asked whether the packages had stamps on them, meaning unique seals used by narcotics dealers that are placed on kilogram packages of narcotics. ALMODOVAR-ALVAREZ responded that the packages were "halves" [half kilograms of heroin per package] and that one package had a stamp and the other did not. The UC then placed a call to law enforcement officers surveilling the area and gave the pre-determined arrest signal. ALMODOVAR-ALVAREZ and Individual C were then placed under arrest without incident and were verbally given their *Miranda* rights.

17. On or about May 20, 2019, at approximately 12:30 p.m., ALMODOVAR-ALVAREZ was taken to his residence on the 5900 block of West 35th Street in Cicero.

9

ALMODOVAR-ALVAREZ was read his Miranda rights again. ALMODOVAR-ALVAREZ provided officers with a written waiver of his *Miranda* rights and agreed to speak with law enforcement. ALMODOVAR-ALVAREZ told law enforcement that he was given a kilogram and a half of heroin approximately three months from Individual D, a narcotics dealer based in Sinaloa, Mexico. ALMODOVAR-ALVAREZ stated that Individual D told him to meet with the UC on Friday, May 17, 2019, and give the UC a sample of heroin. Individual D told ALMODOVAR-ALVAREZ that if the UC liked the sample, the UC would buy at least one kilogram of heroin. ALMODOVAR-ALVAREZ stated that after providing the UC with a sample, Individual A called ALMODOVAR-ALVAREZ and told him to meet with the UC on Monday, May 20, 2019 and to give the UC a kilogram of heroin. ALMODOVAR-ALVAREZ and Individual C were released that same day without charges being filed.

18. On or about June 27, 2019, law enforcement officers conducted surveillance on the 5500 block of South Whipple Street, Chicago, Illinois, where officers observed ALMODOVAR-ALVAREZ's vehicle (a gray 2005 Chevy Equinox) behind a residence. Law enforcement officers began conducting surveillance in front of this residence. At approximately 2:20 p.m., law enforcement officers saw a silver Toyota Avalon drive up to the same residence on the 5500 block of South Whipple Street with ALMODOVAR-ALVAREZ and Individual C inside of the vehicle. Law enforcement officers converged on the Toyota Avalon and placed ALMODOVAR-ALVAREZ and Individual C under arrest. ALMODOVAR-ALVAREZ and Individual C were read their *Miranda* rights and both signed written *Miranda* waivers.

10

ALMODOVAR-ALVAREZ and Individual C also provided written consent to search their residence.[5] Prior to conducting the search, ALMODOVAR-ALVAREZ told law enforcement that he had a kilogram of heroin located in the bedroom of the apartment. Law enforcement officers proceeded to search the apartment. During the search of the apartment, law enforcement officers eventually found a brick shaped package containing a tannish colored powder in the rear bedroom of the apartment. The contents of package later field tested presumptively positive for heroin and weighed approximately one kilogram.

## CONCLUSION

19.     Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about May 20, 2019, AUGUSTINE ALMODOVAR-ALVAREZ did knowingly and intentionally distribute a controlled substance, namely, one kilogram or more of a mixture and substance containing a detectable amount of

---

[5] According to ALMODOVAR-ALVAREZ and Individual C, they were residing together in an apartment located in a residence on the 5500 block of South Whipple Street, Chicago, Illinois.

heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

_____
ANTONIO VAZQUEZ
Task Force Officer, Drug Enforcement Administration

SUBSCRIBED AND SWORN to before me on June 28, 2019.

_____
YOUNG B. KIM
United States Magistrate Judge